IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOHN JOSEPH LIPTOK, et al.,** | : | Civil No. 3:15-CV-156 |
| **Plaintiffs,** | : | |
| v. | : | (Judge Munley) |
| **BANK OF AMERICA,** | : | (Magistrate Judge Carlson) |
| **Defendant.** | : | |

**MEMORANDUM ORDER**

**I.   Factual Background**

The plaintiffs, who are representing themselves in this lawsuit, filed a complaint on January 23, 2015, which named the Bank of America as the defendant. In their complaint the plaintiffs recited that they own and reside in one half of a duplex property in Schuylkill County, Pennsylvania. (Doc. 1.) According to the plaintiffs, the other half of this duplex is owned by the defendant who has failed to care for and maintain the property, despite agreeing to do so. (Id.) As a result of this alleged neglect and inaction by the defendant, the plaintiffs allege that their property has been damaged. Asserting that the defendant has breached promises made to them to properly maintain the property, the plaintiffs have sued Bank of America. (Id.)

Throughout these proceedings, we have understood that the plaintiffs are proceeding *pro se*, and, therefore, we have consistently endeavored to make allowances for their *pro se* status and are liberally construing the requests and pleadings that they may file. However, in order to ensure the fair administration of justice we have informed that plaintiffs that they must meet certain minimum requirements. As part of this effort to assist the parties, our duty of candor to all parties has compelled us to repeatedly advise the plaintiffs that some of their actions, taken through the lead plaintiff, John Joseph Liptok, are actually impeding their efforts to fairly and promptly adjudicate this matter. We have also specifically admonished Mr. Liptok that: " '[p]ersonal attacks ... are never appropriate in any court filing,' Lewis v. Delp Family Powder Coatings, Inc., CIV.A 08–1365, 2010 WL 3672240 (W.D.Pa. Sept.15, 2010)." Dougherty v. Advanced Wings, LLC, No. 1:13-CV-447, 2013 WL 4041589, at *3 (M.D. Pa. Aug. 7, 2013). Therefore, "the routine use of personal invective, acerbic asides, caustic commentaries, disgruntled digressions, and ad hominem observations" will not be permitted by the Court and will result in pleadings being stricken by the court. Id.

In addition, we have addressed requests by the plaintiffs for appointment of counsel. On this score, we have explained to the plaintiffs that there is neither a constitutional nor a statutory right to counsel for civil litigants. Parham v. Johnson,

126 F.3d 454, 456-57 (3d Cir. 1997); Tabron v. Grace, 6 F.3d 147, 153 (3d Cir. 1993). Instead, 28 U.S.C. § 1915(e)(1) simply provides that "[t]he court may request an attorney to represent any person unable to employ counsel." Under §1915(e)(1), a district court's appointment of counsel is discretionary and must be made on a case-by-case basis. Tabron, 6 F.3d at 157-58. In Parham, the United States Court of Appeals outlined the standards to be considered by courts when reviewing an application to appoint counsel pursuant to 28 U.S.C. § 1915(e)(1). In passing on such requests we must first:

> "[D]etermine[] that the plaintiff's claim has some merit, then [we] should consider the following factors: (1) the plaintiff's ability to present his or her own case; (2) the complexity of the legal issues; (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue such investigation; (4) the amount a case is likely to turn on credibility determinations; (5) whether the case will require the testimony of expert witnesses; [and] (6) whether the plaintiff can attain and afford counsel on his own behalf."

Parham v. Johnson, 126 F.3d at 457.

There is yet another practical consideration which must be taken into account when considering motions for appointment of counsel. As the United States Court of Appeals for the Third Circuit has aptly observed:

> Finally, in addressing this issue, we must take note of the significant practical restraints on the district courts' ability to appoint counsel: the ever-growing number of prisoner civil rights actions filed each year in the federal courts; the lack of funding to pay appointed counsel; and the

> limited supply of competent lawyers who are willing to undertake such representation without compensation. We have no doubt that there are many cases in which district courts seek to appoint counsel but there is simply none willing to accept appointment. It is difficult to fault a district court that denies a request for appointment under such circumstances.

Tabron v. Grace, 6 F.3d 147, 157 (3d Cir. 1993). Mindful of this consideration it has been "emphasize[d] that volunteer lawyer time is extremely valuable. Hence, district courts should not request counsel under § 1915(d) indiscriminately. As the Court of Appeals for the Second Circuit has warned: 'Volunteer lawyer time is a precious commodity.... Because this resource is available in only limited quantity, every assignment of a volunteer lawyer to an undeserving client deprives society of a volunteer lawyer available for a deserving cause. We cannot afford that waste.' Cooper v. A. Sargenti Co., 877 F.2d 170, 172 (2d Cir.1989)." Tabron v. Grace, 6 F.3d 147, 157 (3d Cir. 1993).

In this case our analysis of these factors has led us to conclude that counsel should not be appointed in this case at the present time. At the outset, we believe that we should defer any such decision until after we have had the opportunity to further assess the first benchmark standard we must address, the question of whether the plaintiffs' claims have arguable legal merit. In our view, it would be inappropriate to appoint counsel until we have the opportunity to complete this legal merits analysis

in this matter. Therefore, the appointment of counsel must await resolution of any dispositive motions, motions which are due to be filed by July 2016. Moreover, while we understand that the plaintiffs doubtless face some obstacles in bringing this action, to date the plaintiffs have demonstrated an ability to effectively present this case. Furthermore, the actual investigation that the plaintiffs have to do is minimal, since the pleadings show that the plaintiffs are fully aware of the bases for these claims against the defendant. Finally, we note that the tone and tenor of the plaintiffs' pleadings reflect that the plaintiffs have emphatic, and occasionally idiosyncratic views regarding how to proceed in this case, and suggest that the plaintiffs who are insistent architects of their own claims may not be prepared to defer to the judgment of any appointed counsel on matter of litigation strategy, yet another factor which would make securing volunteer counsel for this case difficult or impossible.

We have also warned all plaintiffs that, while Mr. Liptok has undertaken the lion's share of responsibility for presenting the plaintiffs' arguments and responses and making legal filings, as a non-lawyer Mr. Liptok is only authorized to represent his own interests in this case and is not empowered to "represent" the interests of other unrepresented parties. This rule is, first, prescribed by statute: "In all courts of the United States the ***parties may plead and conduct their own cases personally or by counsel*** as, by the rules of such courts, respectively, are permitted to manage and

conduct causes therein." 28 U.S.C. § 1654 (emphasis added). In keeping with this statutory language, the Third Circuit Court of Appeals has instructed that "a non-lawyer appearing *pro se* [is] not entitled to play the role of attorney for other *pro se* parties in federal court." Osei-Afriyie by Osei-Afriyie v. Med. Coll. of Pennsylvania, 937 F.2d 876, 882 (3d Cir. 1991) (holding father not authorized to represent the legal interests of his children in federal court, and vacating judgment that had been entered against unrepresented children); see also Lutz v. Lavelle, 809 F. Supp. 323, 325 (M.D. Pa. 1991) ("It is a well established principle that while a layman may represent himself with respect to his individual claims, he is not entitled to act as an attorney for others in a federal court."); cf. Fed. R. Civ. P. 11(a) (requiring that all pleadings, motions, and submissions to federal courts be signed by an attorney of record, or by the unrepresented party himself or herself).

We have brought this black letter law to the plaintiffs' collective attention because they all needed to understand that although Mr. Liptok is legally entitled to represent **his own** interests in this litigation, he is not permitted to represent their individual interests. Relatedly, Mr. Liptok should be clear that his authority to proceed *pro se* in this action is limited to representing his own claims. As a result we have ordered that, going forward, all *pro se* parties shall be required to sign (electronically or by hand) all pleadings, motions, and submissions made in this case

and stated that Mr. Liptok, as a non-lawyer, is not authorized to provide these individuals with legal representation in federal court. Furthermore, because we believe this matter deserves a prompt resolution we have vacated the stay previously entered in this case and set the following revised and expedited case management deadlines in this case: The Close of Discovery was extended to **July 27, 2016**; Expert Witness Report Disclosure was extended to **August 10, 2016**; and the Dispositive Motions and Supporting Briefs deadline was now **July 27, 2016**.

Apparently dissatisfied with the progress of the litigation, and the Court's rulings on these issues, the plaintiffs have filed what we construe as a motion seeking the Court's recusal. (Doc. 64.) For the reasons set forth below, this motion will be denied.

**II.  Discussion**

    **A.  Recusal of This Court is Not Warranted**

The legal standards which govern such recusal requests are clear and clearly compelling. These principles begin with the settled tenet that a judge "has as strong a duty to sit when there is no legitimate reason to recuse as he does to recuse when the law and facts require." Bryce v. Episcopal Church in the Diocese of Colorado, 289 F.3d 648, 659 (10th Cir.2002) (quoting Nichols, 71 F.3d at 351); Cooney v. Booth, 262 F.Supp.2d 494, 508 (E.D.Pa.2003); see also United States v. Snyder, 235

F.3d 42, 46 n. 1 (1st Cir.2000); Curley v. St. John's University, 7 F.Supp.2d 359, 362 (S.D.N.Y.1998).

The guiding benchmarks in this field were aptly summarized in Conklin v. Warrington Township, 476 F.Supp.2d 458 (M.D. Pa. 2007), a case which considered, and rejected, a recusal request. In terms that are equally applicable here, the court explained that:

> The disqualification standard is set forth in 28 U.S.C. § 455, which provides in pertinent part as follows:
>
> (a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
> (b) He shall also disqualify himself in the following circumstances:
> (1) Where he has a personal bias or prejudice concerning a party....
>
> Id. Pursuant to the above quoted language, the court must consider whether its rulings and statements objectively produce the appearance of bias against Conklin. As explained by the Supreme Court, these provisions "require ... 'bias and prejudice' ... to be evaluated on an objective basis, so that what matters is not the reality of bias or prejudice but its appearance." Liteky v. United States, 510 U.S. 540, 548, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994). This objective standard requires recusal when a "reasonable man knowing all the circumstances would harbor doubts concerning the judge's impartiality." Edelstein v. Wilentz, 812 F.2d 128, 131 (3d Cir.1987) (citing United States v. Dalfonso, 707 F.2d 757, 760 (3d Cir.1983)); see also In re Antar, 71 F.3d 97, 101 (3d Cir.1995). If the record presents a close question, the court must resolve the issue in favor of disqualification. Nichols v. Alley, 71 F.3d 347, 352 (10th Cir.1995).

Id. at 462-3.

It is clear, however, that a party's disappointment with what the party anticipates may be the Court's rulings cannot form the basis for recusal. As we have observed:

> The Third Circuit has repeatedly observed that "a party's displeasure with legal rulings does not form an adequate basis for recusal." Securacomm Consulting, Inc. v. Securacom, Inc.., 224 F.3d 273, 278 (3d Cir.2000) (citing In re TMI Litig., 193 F.3d 613, 728 (3d Cir.1999) and Jones v. Pittsburgh Nat'l Corp., 899 F.2d 1350, 1356 (3d Cir.1990)). Subsections 455(a) and (b)(1) require the source of bias to be extrajudicial, that is stemming from a source outside of the proceeding, or of such an intensity as to make a fair trial impossible. Blanche Rd. Corp. v. Bensalem Twp., 57 F.3d 253 (3d Cir.1995), cert. denied, 516 U.S. 915, 116 S.Ct. 303, 133 L.Ed.2d 208 (1995). As stated by the Supreme Court:
>
> [O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.
>
> Liteky, 510 U.S. at 555, 114 S.Ct. 1147 (emphasis in original).

Id. at 463.

Furthermore, in assessing recusal requests, courts must remain mindful that, a recusal motion may simply be a tactical tool designed to avoid the result which the

law dictates in a case. Thus, in every instance:

> [T]he court must consider whether attacks on a judge's impartiality are simply subterfuge to circumvent anticipated adverse rulings. In re Antar, 71 F.3d at 101; Alexander v. Primerica Holdings, Inc., 10 F.3d 155, 162 (3d Cir.1993). Indeed, a judge "has as strong a duty to sit when there is no legitimate reason to recuse as he does to recuse when the law and facts require." Bryce v. Episcopal Church in the Diocese of Colorado, 289 F.3d 648, 659 (10th Cir.2002) (quoting Nichols, 71 F.3d at 351); Cooney v. Booth, 262 F.Supp.2d 494, 508 (E.D.Pa.2003); see also United States v. Snyder, 235 F.3d 42, 46 n. 1 (1st Cir.2000); Curley v. St. John's University, 7 F.Supp.2d 359, 362 (S.D.N.Y.1998).

Id. at 463.

Judged against these legal standards, we must decline the plaintiffs' request that we recuse ourselves from this case. Indeed, this recusal motion fails for a fundamental reason. The plaintiffs simply cannot justify recusal based upon the rulings made by this Court. Such a claim is plainly inadequate to justify recusal since it is absolutely clear that "a party's displeasure with legal rulings does not form an adequate basis for recusal." Securacomm Consulting, Inc. v. Securacom, Inc., 224 F.3d 273, 278 (3d Cir.2000) (citing In re TMI Litig., 193 F.3d 613, 728 (3d Cir.1999) and Jones v. Pittsburgh Nat'l Corp., 899 F.2d 1350, 1356 (3d Cir.1990).

Furthermore, the plaintiffs' assertions that the Court is acting as a partisan for one party are entirely incorrect, and unfounded, and simply reflect a lack of understanding regarding the role of the Court. Moreover, the plaintiffs' recusal

request stems from the erroneous premise that we have delayed this case. We have not. Quite the contrary, the delays in this litigation have sadly arisen due to the actions of Mr. Liptok, who persists in substituting invective for reasoned discourse. In addition, the plaintiffs concerns are often factually inaccurate. For example, the plaintiffs voice concerns over the conduct of this litigation by former defense counsel, but fail to appreciate that this attorney is no longer handling their case. In addition, the plaintiffs allege that "the judge has YELLED at and threatened the plaintiffs." This assertion is also demonstrably incorrect since we have never spoken to any of the individual plaintiffs aside from a single conversation instructing Joseph Liptok to respond to questions posed to him at a deposition. Finally, and perhaps most significantly, the plaintiffs fail to appreciate that adherence to the schedule set by this Court is actually designed to do what they say they wish to do; namely, secure a prompt resolution of the merits of this dispute. Indeed, the parties are admonished to complete discovery, and file any dispositive motions, by July 27, 2016, so this case can then be resolved on motions or set for trial.

In sum, the grounds for recusal cited by plaintiffs are factually incorrect and legally insufficient. Therefore, since a judge "has as strong a duty to sit when there is no legitimate reason to recuse as he does to recuse when the law and facts require." Bryce v. Episcopal Church in the Diocese of Colorado, 289 F.3d 648, 659 (10th

Cir.2002) (quoting Nichols, 71 F.3d at 351); Cooney v. Booth, 262 F.Supp.2d 494, 508 (E.D.Pa.2003); see also United States v. Snyder, 235 F.3d 42, 46 n. 1 (1st Cir.2000); Curley v. St. John's University, 7 F.Supp.2d 359, 362 (S.D.N.Y.1998), we are duty-bound to deny this motion.

### III.  Conclusion

Accordingly, for the foregoing reasons the plaintiffs' motion to recuse (Doc. 64.), is DENIED.

So ordered this 24th day of May 2016.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge