**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOHN JOSEPH LIPTOK, et al.,** | : | **Civil No. 3:15-CV-156** |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | **(Judge Munley)** |
| | : | |
| **BANK OF AMERICA,** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **Defendant.** | : | |

## REPORT AND RECOMMENDATION

### I.   Introduction

The persistent petulance of the lead plaintiff in this case, John Liptok, calls to mind the wisdom of the American humorist Will Rogers, who once said: "People who fly into a rage always make a bad landing."

So it is in this case.  For the past twenty-two months John Liptok, a *pro se* plaintiff, has litigated this case on behalf of an array of co-plaintiffs in a fashion which substitutes anger for analysis, fury for facts, and enmity for evidence.  Liptok's largely inarticulate anger has frustrated every effort to fairly address his underlying concerns.  This unthinking anger has also seemingly rendered Liptok both blind and deaf.  Thus, Liptok seems blind to the consequences which must inevitably flow from a wholesale refusal to follow the court's instructions, and has consistently been deaf

1

to the entreaties of the court that he follow the rules when prosecuting the case which he elected to file in federal court.

We note that we are not the first court to observe that John Liptok's incomprehensible *pro se* litigation style completely frustrates any informed understanding of whatever claims he may be attempting to advance. As the Pennsylvania Superior Court noted in 2015 when it dismissed a *pro se* criminal appeal by Liptok from a state summary offense conviction, oftentimes Liptok's filings are "incomprehensible and lack[] pertinent analysis." Com. v. Liptok, No. 176 MDA 2014, 2015 WL 6179515, at *1 (Pa. Super. Ct. Feb. 23, 2015). Notwithstanding these persistent deficiencies, over the past twenty-two months we have repeatedly strived to afford Liptok with every opportunity to comply with the law and the rules of this court by advancing claims and arguments in a cogent, comprehensible and respectful fashion.

These efforts have been unavailing and we now see that Liptok's flights of rage lead to the result predicted by Will Rogers, a bad landing. This case comes before us for consideration of a motion for summary judgment filed by the defendant, Bank of America. (Doc. 69.) Liptok has never properly responded to this motion in accordance with the rules of this court, despite being directed twice to do so. Instead, two months after the deadline for responding to this motion for summary judgment,

the plaintiffs filed pleading styled as a motion to dismiss the motion for summary judgment, which advances legally bankrupt claims in a manner which is often difficult to discern. (Doc. 78.)

Given the plaintiffs' persistent failures spanning the past two years to comply with the basic minimum requirements imposed upon all litigants, for the reasons set forth below it is recommended that this complaint be dismissed.

## II.    <u>Statement of Facts and of the Case</u>

The plaintiffs, who are representing themselves in this lawsuit, filed a complaint on January 23, 2015, which named the Bank of America as the defendant. In their complaint the plaintiffs recited that John Liptok owns and resides in one half of a duplex property in Schuylkill County, Pennsylvania. (Doc. 1.) While this *pro se* complaint demands a great deal of the reader, very liberally construed it appears that the plaintiffs were alleging that the other half of the duplex in which they resided was owned by the defendant Bank, which failed to care for and maintain the property, despite agreeing to do so. (<u>Id</u>.) As a result of this alleged neglect and inaction by the defendant, the plaintiffs allege that their property has been damaged. Asserting that the defendant breached promises made to them, and negligently maintained the property, the plaintiffs have sued Bank of America, and apparently now seek one

trillion dollars in damages. (Doc. 79, p. 1 "The lawsuit was filed for $1 trillion dollars.")

From its inception, progress in this litigation has been stymied by John Liptok's persistent refusal to cooperate in the simplest of matters. Thus, on April 16, 2015, Liptok was instructed to cooperate in the preparation of a case management plan. (Doc. 18.) He refused to meaningfully participate in this initial step in the litigation process, compelling Bank of America to unilaterally file a case management plan. (Docs. 21 and 22.) When a telephonic case management conference was held, Liptok immediately reduced this conference to a wholly unproductive and acrimonious exchange, an irrational and irascible course of conduct which led the first United States Magistrate Judge assigned to this matter to recuse herself from this case. (Doc. 23.)

The case was then reassigned to the undersigned. As part of our pretrial management of this lawsuit, we have repeatedly informed Liptok that we are committed to assisting all parties in reaching a prompt and fair resolution of this matter. We also explained that we understand that the plaintiffs are proceeding *pro se*, and, therefore, we consistently endeavored to make allowances for their *pro se* status and liberally construed the requests and pleadings that they filed. We have underscored, however, that in order to ensure the fair administration of justice we must treat all parties equally, and we have insisted that all parties meet certain

4

minimum requirements.  Our duty of candor to all parties has also required that we advise the plaintiffs that the actions taken through the lead plaintiff, John Joseph Liptok, have actually impeded their efforts to fairly adjudicate this matter.

In particular, we instructed Liptok that all parties must communicate with one another in a respectful and professional fashion.  This obligation is placed equally upon attorneys and *pro se* litigants.  In short, we have consistently advised John Liptok that all parties that:  " '[p]ersonal attacks ... are never appropriate in any court filing,' Lewis v. Delp Family Powder Coatings, Inc., CIV.A 08–1365, 2010 WL 3672240 (W.D.Pa. Sept.15, 2010)." Dougherty v. Advanced Wings, LLC, No. 1:13-CV-447, 2013 WL 4041589, at *3 (M.D. Pa. Aug. 7, 2013).  Therefore, we have warned Liptok on numerous occasions that "the routine use of personal invective, acerbic asides, caustic commentaries, disgruntled digressions, and ad hominem observations" will not be permitted by the court and will result in pleadings being stricken by the court.  Id.

These repeated admonitions were made by the court as part of a patient effort to secure some minimal modicum of courtesy, civility and rules compliance from the plaintiffs.  However, our experience over the past two years now amply demonstrates that those efforts have been completely unavailing, and John Liptok, the architect of

this case, is simply unable to comply with multiple, clear and precise instructions from the court.

Our efforts to secure compliance from the plaintiffs with the minimum requirements of conduct expected from all litigants began the day after Judge Schwab's recusal, on May 12, 2015, when we entered a case management scheduling order in this case. (Doc.25.)  One month later, Liptok wrote the court on June 11, 2015, leveling a series of wild and baseless charges against opposing counsel and Judge Schwab, and coupled those accusations with a series of averments which reflected a fundamental misunderstanding regarding the legal process.  Accordingly, we responded to Liptok though an order which addressed Liptok's specific concerns, admonished Liptok to refrain from *ad hominem* attacks, and provided Liptok with a copy of the court's Standing Practice Order for *pro se* litigants.  That Standing Practice Order provided clear and precise guidance to Liptok regarding his obligation to file briefs in support of motions which he submitted, as well as Liptok's obligation to respond in a timely and complete fashion to defense motions. (Docs. 27 and 28.) Despite this clear direction from the court, Liptok's litigation practice swiftly descended into an irate but largely unintelligible chaos.  This chaotic, undisciplined, and inappropriate litigation practice was marked by at least four cardinal errors.

First, Liptok has persisted in repeatedly filing documents which he styles as motions, without submitting supporting briefs to explain the legal basis for what are often eccentric requests which have no legal foundation.  As early as November 2015, (Doc. 41.), we  informed Liptok that the failure to file a brief has consequences for the plaintiffs since we are entitled to deem the plaintiffs to have withdrawn a motion when they fail to properly support that motion by filing a brief in a timely fashion. See, e.g., Salkeld v. Tennis, 248 F. App'x 341 (3d Cir.2007) (affirming dismissal of motion  under Local Rule 7.5); Booze v. Wetzel, 1:12-CV-1307, 2012 WL 6137561 (M.D. Pa. Nov. 16, 2012) report and recommendation adopted, 1:CV-12-1307, 2012 WL 6138315 (M.D. Pa. Dec. 11, 2012); Breslin v. Dickinson Twp., 1:09–CV–1396, 2011 WL 1577840 (M.D.Pa. Apr.26, 2011); Prinkey v. Tennis, No. 09–52, 2010 WL 4683757 (M.D.Pa. Nov.10, 2010) (dismissal under Local Rule 7.5); Griffin v. Lackawanna County Prison Board, No. 07–1683, 2008 WL 4533685 (M.D.Pa.Oct.6, 2008) (dismissal under Local Rule 7.6).  Despite these admonitions, Liptok continues to file motions without accompanying briefs, a course of conduct which has compelled us to deny these motions.  (Doc. 71.)

In addition, Liptok has consistently neglected to obey court orders directing him to respond to defense motions.  Liptok has continued to ignore this basic fundamental responsibility of a litigant despite being advised on at least four

7

occasions in clear and precise terms that dismissal of his lawsuit could be one consequence of failing to comply with court orders and the rules of this court.  (Docs. 47, 49, 72, 76.)

Further, by March of 2016, it had become apparent that John Liptok, a *pro se* plaintiff was, in effect, acting as counsel for the other named *pro se* plaintiffs in this case, a practice which is expressly forbidden in federal court.  Accordingly, on March 1, 2016, were notified the plaintiffs that:

> It has become apparent by this point in the litigation that Mr. Liptok has undertaken the lion's share of responsibility for presenting the plaintiffs' arguments and responses and making legal filings.  However, as a non-lawyer, Mr. Liptok is only authorized to represent his own interests in this case and is not empowered to "represent" the interests of other unrepresented parties.  This rule is, first, prescribed by statute: "In all courts of the United States the ***parties may plead and conduct their own cases personally or by counsel*** as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein."  28 U.S.C. § 1654 (emphasis added).  In keeping with this statutory language, the Third Circuit Court of Appeals has instructed that "a nonlawyer appearing pro se [is] not entitled to play the role of attorney for other pro se parties in federal court."  Osei-Afriyie by Osei-Afriyie v. Med. Coll. of Pennsylvania, 937 F.2d 876, 882 (3d Cir. 1991) (holding father not authorized to represent the legal interests of his children in federal court, and vacating judgment that had been entered against unrepresented children); see also Lutz v. Lavelle, 809 F. Supp. 323, 325 (M.D. Pa. 1991) ("It is a well established principle that while a layman may represent himself with respect to his individual claims, he is not entitled to act as an attorney for others in a federal court."); cf. Fed. R. Civ. P. 11(a) (requiring that all pleadings, motions, and submissions to federal courts be signed by an attorney of record, or by the unrepresented party himself or herself).  We bring the foregoing

> authority to the plaintiffs' collective attention because they should all understand that although Mr. Liptok is legally entitled to represent **his own** interests in this litigation, he is not permitted to represent their individual interests.  Relatedly, Mr. Liptok should be clear that his authority to proceed *pro se* in this action is limited to representing his own claims.  Going forward, all *pro se* parties shall be required to sign (electronically or by hand) all pleadings, motions, and submissions made in this case.  Mr. Liptok, as a non-lawyer, is not authorized to provide these individuals with legal representation in federal court.

(Doc. 61, p. 6-7.)

Despite this explicit direction, both John Liptok and the remaining plaintiffs in this lawsuit have failed to follow our instructions.  Instead, we continue to receive unsigned documents which purport to be filed by these remaining plaintiffs, but which are virtually identical in style and substance to filings previously made by Liptok himself.  (Compare Doc. 73 with Docs. 78 and 79.)  Thus, it is apparent that John Liptok continues to act as the *de facto pro se* counsel for the other plaintiffs and that all of the plaintiffs continue to ignore both the law, and this court's orders, which forbid this conduct.

The final, and most disturbing aspect of Liptok's persistent failure to comply with court instructions and properly comport himself as a litigant has been the plaintiffs' repeated reliance on wholly inappropriate and outrageous personal invective throughout this litigation.  There are several profoundly troubling aspects to the plaintiff's non-compliance in this regard.

First, the conduct is unrelenting.  After two years Mr. Liptok has proven himself entirely incorrigible and simply unable to maintain a minimum level of civility in his communications with the court, counsel and others.  Indeed, we have taken the unprecedented action of striking five separate filings by Liptok due to the completely inappropriate nature of these pleadings.

Second, Liptok's violations of these basic tenets of civility and legal practice have been particularly egregious.  Thus, in the course of this litigation Liptok has leveled multiple, baseless, intemperate, and improper attacks upon the motives and conduct of the court, other parties and counsel.  Liptok has at times engaged in mischievous, frivolous, and wholly unwarranted speculation regarding criminal and sexual misconduct by other participants in this litigation, matters that are entirely unsupported by any basis in fact, are completely irrelevant to the issues in this lawsuit, and represent the height of irresponsible behavior.  Finally, there has been a dark undercurrent of misogyny in Liptok's pleadings, misogyny which has no place in a court of law, or any form of civil discourse.

This combination of cardinal sins have been amply displayed by the plaintiffs in the course of their latest litigative forays in this lawsuit.  Thus, on July 27, 2016, the defendant filed a motion for summary judgment and brief in this case.  (Docs. 69 and 70.)  The following day, July 28, we ordered Liptok to respond to this motion by

August 17, and advised Liptok in clear and precise terms that "a failure to comply with this direction may result in the motion being deemed unopposed and granted." (Doc. 72, p. 3.)

Liptok did not comply with this order. Instead, on August 4, 2016, Liptok elected to file a series of motions, including a motion to strike this defense motion. (Docs. 73 and 74.) In these filings, Liptok violated the rules of this court, and the explicit guidance which we had previously given him on numerous occasions by refusing to submit a brief in support of his motions. Liptok's persistent refusal to obey the rules compelled us to deny these motions. (Doc. 76.) We also instructed Liptok "that a response to the motion for summary judgment motion filed by the defendant is due on or before **August 22, 2016**," and put him on notice that a failure to respond could result in the motion being deemed unopposed and granted. (Id.)

Liptok ignored this second, explicit warning, and has never filed a response in opposition to this summary judgment motion, conduct which constitute a plain violation of multiple court orders. Instead, after some two months passed, on October 5, 2016, a document styled as a motion to dismiss the summary judgment motion was filed by the plaintiffs. This motion, in its own way, completed the picture of the plaintiffs' dismal history of non-compliance with court orders over the past two years. First, by any measure the filing was completely untimely, totally non-complaint with

court orders and entirely unresponsive to the instructions the plaintiffs have received. Second, this filing, which purported to be submitted by Liptok's children, was not signed by any of these plaintiffs, a clear violation of our prior express order.  Instead, this filing aped documents previously submitted by John Liptok himself, leading us to the unmistakable conclusion that John Liptok continues to act as counsel for these other *pro se* plaintiffs, submitting pleadings in their names, conduct which is forbidden by statute and case law, and conduct which the plaintiffs have been explicitly told is forbidden.  Finally, these filings continue to indulge in personal invective of the type which is prohibited in federal court, engaging in unwarranted personal attacks on Judge Munley, counsel, and other participants in this litigation.

In short, taken together the tragic, feckless history of this litigation now shows beyond any doubt that the plaintiffs simply are not able to comply with court direction, obey court orders, or conduct themselves appropriately.  Instead of being governed by the rule of law, the plaintiffs, sadly, are governed by an unreasoned and unreasoning anger, and like all people who fly into a rage, that anger now leads to a bad landing, the dismissal of their case.

III.    **Discussion**

A.      **Under The Rules of This Court This Motion to Dismiss Should Be Deemed Unopposed and Granted**

At the outset, under the local rules of this court the plaintiffs should be deemed to concur in this motion for summary judgment, since the plaintiffs have failed to timely oppose the motion, or otherwise properly litigate this case.  This procedural default completely frustrates and impedes efforts to resolve this matter in a timely and fair fashion, and under the rules of this court warrants dismissal of the action, since Local Rule 7.6 of the rules of this court imposes an affirmative duty on the plaintiff to respond to  motions and  provides that

> Any party opposing any motion, other than a motion for summary judgment, shall file a brief in opposition within fourteen (14) days after service of the movant's brief, or, if a brief in support of the motion is not required under these rules, within seven (7) days after service of the motion.  *Any party who fails to comply with this rule shall be deemed not to oppose such motion*.  Nothing in this rule shall be construed to limit the authority of the court to grant any motion before expiration of the prescribed period for filing a brief in opposition.  A brief in opposition to a motion for summary judgment and LR 56.1 responsive statement, together with any transcripts, affidavits or other relevant documentation, shall be filed within twenty-one (21) days after service of the movant's brief.

Local Rule 7.6 (emphasis added).

It is now well-settled that "Local Rule 7.6 can be applied to grant a motion to dismiss without analysis of the complaint's sufficiency 'if a party fails to comply with

the [R]ule after a specific direction to comply from the court.' <u>Stackhouse v.</u>

<u>Mazurkiewicz</u>, 951 F.2d 29, 30 (1991)." <u>Williams v. Lebanon Farms Disposal, Inc</u>.,

No. 09-1704,  2010 WL 3703808, *1 (M.D. Pa. Aug.26, 2010).   In this case the

plaintiff has not complied with the local rules, or our prior orders, by filing a timely

response to this motion.   Therefore, these procedural defaults by the plaintiff compel

the court to consider:

> [A] basic truth: we must remain mindful of the fact that "the Federal
> Rules are meant to be applied in such a way as to promote justice.  *See*
> Fed.R.Civ.P. 1.  Often that will mean that courts should strive to resolve
> cases on their merits whenever possible.  However, justice also requires
> that the merits of a particular dispute be placed before the court in a
> timely fashion ...."  <u>McCurdy v. American Bd. of Plastic Surgery</u>, 157
> F.3d 191, 197 (3d Cir.1998).

<u>Lease v. Fishel</u>, 712 F. Supp. 2d 359, 371 (M.D.Pa. 2010).

With this basic truth in mind, we acknowledge a fundamental guiding tenet of

our legal system.   A failure on our part to enforce compliance with the rules, and

impose the sanctions mandated by those rules when the rules are repeatedly breached,

"would actually violate the dual mandate which guides this court and motivates our

system of justice:  'that courts should strive to resolve cases on their merits whenever

possible [but that] justice also requires that the merits of a particular dispute be placed

before the court in a timely fashion'."  <u>Id.</u>  Therefore, we are obliged to ensure that

one party's refusal to comply with the rules does not lead to an unjustified prejudice to those parties who follow the rules.

These basic tenets of fairness apply here.  In this case, the plaintiffs have failed to comply with Local Rule 7.6 by filing a timely, and appropriate, response to this dispositive motion.  This failure now compels us to apply the sanction called for under Rule 7.6 and deem the plaintiffs to not oppose the motion for summary judgment.

### B.   Dismissal of this Case Is Also Warranted Under Rule 41

Beyond the requirements imposed by the local rules of this court, Rule 41(b) of the Federal Rules of Civil Procedure also authorizes a court to dismiss a civil action for failure to prosecute, stating that:  "If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it."  Fed. R. Civ. P. 41(b).  Decisions regarding dismissal of actions for failure to prosecute rest in the sound discretion of the court, and will not be disturbed absent an abuse of that discretion. Emerson v. Thiel College, 296 F.3d 184, 190 (3d Cir. 2002)(citations omitted).  That discretion, however, while broad is governed by certain factors, commonly referred to as Poulis factors.  As the United States Court of Appeals for the Third Circuit has noted:

> To determine whether the District Court abused its discretion [in dismissing a case for failure to prosecute], we evaluate its balancing of the following factors:   (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.  Poulis v. State Farm Fire and Cas. Co., 747 F.2d 863, 868 (3d Cir.1984).

Emerson, 296 F.3d at 190.

In exercising this discretion "there is no 'magic formula' that we apply to determine whether a district court has abused its discretion in dismissing for failure to prosecute." Lopez v. Cousins, 435 F. App'x 113, 116 (3d Cir. 2011)(quoting Briscoe v. Klem, 538 F.3d 252 (3d Cir. 2008))  Therefore, "[i]n balancing the Poulis factors, [courts] do not [employ] a . . . 'mechanical calculation' to determine whether a district court abused its discretion in dismissing a plaintiff's case.  Mindek v. Rigatti, 964 F.2d 1369, 1373 (3d Cir.1992)." Briscoe v. Klaus,  538 F.3d at 263.  Consistent with this view, it is well-settled that " 'no single Poulis factor is dispositive,' Ware, 322 F.3d at 222, [and it is] clear that 'not all of the Poulis factors need be satisfied in order to dismiss a complaint.' Mindek, 964 F.2d at 1373." Briscoe v. Klaus,  538 F.3d at 263.  Moreover, recognizing the broad discretion conferred upon the district court in making judgments weighing these six factors, the

court of appeals has frequently sustained such dismissal orders where there has been a pattern of dilatory conduct by a *pro se* litigant who is not amenable to any lesser sanction. See, e.g., Emerson v. Thiel College, supra; Tillio v. Mendelsohn, 256 F. App'x 509 (3d Cir. 2007); Reshard v. Lankenau Hospital, 256 F. App'x 506 (3d Cir. 2007); Azubuko v. Bell National Organization, 243 F. App'x 728 (3d Cir. 2007).

In this case, a dispassionate assessment of the Poulis factors weighs heavily in favor of dismissing this action. At the outset, a consideration of the first Poulis factor, the extent of the party's personal responsibility, shows that the plaintiffs have repeatedly failed to abide by court orders, have otherwise neglected to properly litigate this case, or respond to defense motions in a timely and appropriate fashion. Thus, the fault for the sorry state of this lawsuit rests solely and exclusively with the Liptoks.

Similarly, the second Poulis factor– the prejudice to the adversary caused by the failure to abide by court orders–also calls for dismissal of this action. Indeed, this factor–the prejudice suffered by the party seeking sanctions–is entitled to great weight and careful consideration. As the United States Court of Appeals for the Third Circuit has observed:

> "Evidence of prejudice to an adversary would bear substantial weight in
> support of a dismissal or default judgment." Adams v. Trustees of N.J.

> Brewery Employees' Pension Trust Fund, 29 F.3d 863, 873-74 (3d
> Cir.1994) (internal quotation marks and citation omitted).  Generally,
> prejudice includes "the irretrievable loss of evidence, the inevitable
> dimming of witnesses' memories, or the excessive and possibly
> irremediable burdens or costs imposed on the opposing party."  Id. at
> 874 (internal quotation marks and citations omitted). . . .  However,
> prejudice is not limited to "irremediable" or "irreparable" harm. Id.; see
> also Ware v. Rodale Press, Inc., 322 F.3d 218, 222 (3d Cir.2003); Curtis
> T. Bedwell & Sons, Inc. v. Int'l Fidelity Ins. Co., 843 F.2d 683, 693-94
> (3d Cir.1988).  It also includes "the burden imposed by impeding a
> party's ability to prepare effectively a full and complete trial strategy."
> Ware, 322 F.3d at 222.

Briscoe  v. Klaus, 538 F.3d at 259-60.

In this case the plaintiffs' repeated failures to properly litigate this claim or

comply with court orders now wholly frustrates and delays the resolution of this

action.  In such instances, the defendant is plainly prejudiced by the plaintiff's

continuing inaction and dismissal of the case clearly rests in the discretion of the trial

judge. Tillio v. Mendelsohn, 256 F. App'x 509 (3d Cir. 2007) (failure to timely serve

pleadings compels dismissal); Reshard v. Lankenau Hospital, 256 F. App'x 506 (3d

Cir. 2007) (failure to comply with discovery compels dismissal); Azubuko v. Bell

National Organization, 243 F. App'x 728 (3d Cir. 2007) (failure to file amended

complaint prejudices defense and compels dismissal).

When one considers the third Poulis factor-the history of dilatoriness on the

plaintiff's part–it becomes clear that dismissal of this action is now appropriate.  In

this regard, it is clear that "'[e]xtensive or repeated delay or delinquency constitutes a history of dilatoriness, such as consistent non-response . . . , or consistent tardiness in complying with court orders.' Adams, 29 F.3d at 874." Briscoe v. Klaus, 538 F.3d at 260-61 (some citations omitted).  Here, the plaintiffs have consistently failed to obey court orders.  The plaintiffs have also failed to timely file pleadings, and have not complied with orders directing them to take action in this case.  The plaintiffs also persist in a pattern of outrageously inappropriate personal invectives in their pleadings, personal assaults which " 'are never appropriate in any court filing,' Lewis v. Delp Family Powder Coatings, Inc., CIV.A 08–1365, 2010 WL 3672240 (W.D.Pa. Sept.15, 2010)." Dougherty v. Advanced Wings, LLC, No. 1:13-CV-447, 2013 WL 4041589, at *3 (M.D. Pa. Aug. 7, 2013).  Furthermore, the plaintiffs also continue to indulge in what they have been informed is a forbidden, improper course of conduct. Specifically, it is evident that John Liptok continues to act as *de facto* counsel for the other plaintiffs in this case, even though we have informed him that is only authorized to represent his own interests in this case and is not empowered to "represent" the interests of other unrepresented parties.  This rule is, first, prescribed by statute:  "In all courts of the United States the *parties may plead and conduct their own cases personally or by counsel* as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein."  28 U.S.C. § 1654 (emphasis added).  In

keeping with this statutory language, the Third Circuit Court of Appeals has instructed that "a nonlawyer appearing *pro se* [is] not entitled to play the role of attorney for other *pro se* parties in federal court." Osei-Afriyie by Osei-Afriyie v. Med. Coll. of Pennsylvania, 937 F.2d 876, 882 (3d Cir. 1991) (holding father not authorized to represent the legal interests of his children in federal court, and vacating judgment that had been entered against unrepresented children); see also Lutz v. Lavelle, 809 F. Supp. 323, 325 (M.D. Pa. 1991). On this score the plaintiffs simply choose to ignore the law, and the direction of the court. Given these repeated, multi-faceted violations, we find that the plaintiffs' conduct displays "[e]xtensive or repeated delay or delinquency [and conduct which] constitutes a history of dilatoriness, such as consistent non-response . . . , or consistent tardiness in complying with court orders." Adams, 29 F.3d at 874.

The fourth Poulis factor–whether the conduct of the party or the attorney was willful or in bad faith–also cuts against the plaintiffs in this case. In this setting we must assess whether this conduct reflects mere inadvertence or willful conduct, in that it involved "strategic," "intentional or self-serving behavior," and not mere negligence. Adams v. Trs. of N.J. Brewery Emps.' Pension Trust Fund, 29 F.3d 863, 875 (3d Cir.1994). At this juncture, where the plaintiffs indulge in multiple violations of court orders and rules, consistently engage in prohibited practices, and

routinely descend into baseless, irresponsible, and wildly inappropriate filings, the court is compelled to conclude that the plaintiffs' actions are not accidental or inadvertent but instead reflect an on-going and intentional disregard for this case and the court's instructions.

While Poulis also enjoins us to consider a fifth factor, the effectiveness of sanctions other than dismissal, cases construing Poulis agree that in a situation such as this case, where we are confronted by a *pro se* litigant who will not comply with the rules or court orders, lesser sanctions may not be an effective alternative.  See, e.g., Briscoe v. Klaus, 538 F.3d 252, 262-63 (3d Cir. 2008); Emerson, 296 F.3d at 191.  This case presents such a situation where the plaintiffs' status as *pro se* litigants severely limits the ability of the court to utilize other lesser sanctions to ensure that this litigation progresses in an orderly fashion.  In any event, by entering our prior orders, and repeatedly counseling the plaintiffs on their obligations in this case, we have endeavored to use lesser sanctions, but to no avail.  The plaintiffs still decline to obey court orders, ignore their responsibilities as litigants and indulge in wholly inappropriate and improper behavior.  Since lesser sanctions have been tried, and have failed, only the sanction of dismissal remains available to the court.

Finally, under Poulis we are cautioned to consider one other factor, the meritoriousness of the plaintiffs' claims.  In our view, however, consideration of this

factor cannot save these particular plaintiffs' claims, since the plaintiffs are now, and have consistently been, wholly non-compliant with their obligations as litigants. The plaintiffs cannot refuse to address the merits of these claims, and then assert the untested merits of these claims as grounds for denying a motion to sanction them. Furthermore, it is well-settled that " 'no single Poulis factor is dispositive,' Ware, 322 F.3d at 222, [and it is] clear that 'not all of the Poulis factors need be satisfied in order to dismiss a complaint.' Mindek, 964 F.2d at 1373." Briscoe v. Klaus, 538 F.3d at 263. Therefore, the untested merits of the non-compliant plaintiffs' claims, standing alone, cannot prevent imposition of sanctions.

In any event, as discussed below, many of these claims appear to fail for a variety of reasons, yet another factor which favors dismissal of this case. The apparent flaws in these claims are discussed separately below.

## C.   <u>Many of These Claims Fail on Their Merits</u>

Finally, as we consider this summary judgment motion on its merits, we are compelled to note that the plaintiffs' feckless approach to this litigation, which often substitutes anger for analysis and enmity for evidence, now leaves many of these claims subject to dismissal. The defendants have moved for judgment pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, which provides that "[t]he court

shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. Rule 56(a).  Through summary adjudication a court is empowered to dispose of those claims that do not present a "genuine dispute as to any material fact," Fed. R. Civ. P. 56(a), and for which a trial would be "an empty and unnecessary formality." Univac Dental Co. v. Dentsply Int'l, Inc., No. 07-0493, 2010 U.S. Dist. LEXIS 31615, at *4 (M.D. Pa. Mar. 31, 2010).  The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Id. at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004).  Once the moving party has shown that there is an absence of evidence to support the nonmoving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord

Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate.  Celotex, 477 U.S. at 322.  Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence. Anderson, 477 U.S. at 249.  There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts.  Id. at 252; see also, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In making this determination, the court must "consider all evidence in the light most favorable to the party opposing the motion."  A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

Moreover, a party who seeks to resist a summary judgment motion by citing to disputed material issues of fact must show by competent evidence that such factual disputes exist.  Therefore, a party who seeks to resist a summary judgment motion by citing to disputed material issues of fact must show by competent evidence that such factual disputes exist.  Further, "only evidence which is admissible at trial may be considered in ruling on a motion for summary judgment." Countryside Oil Co., Inc. v. Travelers Ins. Co., 928 F.Supp. 474, 482 (D.N.J.1995).  This rule applies with particular force to parties who attempt to rely upon hearsay statements to establish

material issues of fact which would preclude summary judgment.  With respect to

such claims, it is well-settled that:  "In this circuit, hearsay statements can be

considered on a motion for summary judgment [only] if they are capable of admission

at trial."  Shelton v. University of Medicine & Dentistry of N.J., 223 F.3d 220, 223,

n.2 (3d Cir. 2000), citing Stelwagon Mfg. v. Tarmac Roofing Sys., Inc., 63 F.3d 1267,

1275, n.17 (3d Cir. 1995).  In this regard it has been aptly observed that:

> It is clear that when considering a motion for summary judgement, a
> court may only consider evidence which is admissible at trial, and that
> a party can not rely on hearsay evidence when opposing a motion for
> summary judgment.  See Buttice v. G.D. Searle & Co., 938 F.Supp. 561
> (E.D.Mo.1996).   Additionally, a party must respond to a hearsay
> objection by demonstrating that the material would be admissible at trial
> under an exception to hearsay rule, or that the material is not hearsay.
> See Burgess v. Allstate Ins. Co., 334 F.Supp.2d 1351 (N.D.Ga.2003).
> The mere possibility that a hearsay statement will be admissible at trial,
> does not permit its consideration at the summary judgment stage.
> Henry v. Colonial Baking Co. of Dothan, 952 F.Supp. 744
> (M.D.Ala.1996).

Bouriez v. Carnegie Mellon Univ., No. 02-2104, 2005 WL 2106582,* 9 (W.D.Pa.

Aug. 26, 2005).  Thus, a party may not rely upon inadmissible hearsay assertions to

avoid summary judgment.  Therefore, where a party simply presents inadmissible

hearsay declarations in an attempt to establish a disputed material issue of fact, courts

have typically rebuffed these efforts and held instead that summary judgment is

appropriate.  See, e.g., Synthes v. Globus Medical, Inc., No. 04-1235, 2007 WL

2043184 (E.D.Pa. July 12, 2007); <u>Bouriez v. Carnegie Mellon Univ.</u>, No. 02-2104, 2005 WL 2106582,* 9 (W.D.Pa. Aug. 26, 2005); <u>Carpet Group Int'l v. Oriental Rug Importers Assoc., Inc.</u>, 256 F.Supp.2d 249 (D.N.J. 2003).

Similarly, it is well-settled that: "[o]ne cannot create an issue of fact merely by . . . denying averments . . . without producing any supporting evidence of the denials." <u>Thimons v. PNC Bank, NA</u>, 254 F.App'x 896, 899 (3d Cir. 2007)(citation omitted). Thus, "[w]hen a motion for summary judgment is made and supported . . ., an adverse party may not rest upon mere allegations or denial." <u>Fireman's Ins. Co. Of Newark NJ v. DuFresne</u>, 676 F.2d 965, 968 (3d Cir. 1982), <u>see</u> <u>Sunshine Books, Ltd. v. Temple University</u>, 697 F.2d 90, 96 (3d Cir. 1982)." [A] mere denial is insufficient to raise a disputed issue of fact, and an unsubstantiated doubt as to the veracity of the opposing affidavit is also not sufficient." <u>Lockhart v. Hoenstine</u>, 411 F.2d 455, 458 (3d Cir. 1969). Furthermore, "a party resisting a [Rule 56] motion cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions." <u>Gans v. Mundy</u>, 762 F.2d 338, 341 (3d Cir. 1985)(citing <u>Ness v. Marshall</u>, 660 F.2d 517, 519 (3d Cir. 1981)).

Finally, a party who seeks to resist a summary judgment motion must also comply with Local Rule 56.1, which specifically directs a party opposing a motion for summary judgment to submit a "statement of the material facts, responding to the

numbered paragraphs set forth in the statement required [to be filed by the movant],

as to which it is contended that there exists a genuine issue to be tried"; if the

nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be

served by the moving party will be deemed to be admitted." L.R. 56.1.  Under the

local rules, the failure to follow these instructions  and appropriately challenge the

material facts tendered by the defendant means that those facts must be deemed,

since:

> A failure to file a counter-statement equates to an admission of all the
> facts set forth in the movant's statement.  This local rule serves several
> purposes.  First, it is designed to aid the court in its determination of
> whether any genuine issue of material fact is in dispute.  Second, it
> affixes the burden imposed by Federal Rule of Civil Procedure 56(e), as
> recognized in Celotex Corp. v. Catrett, on the nonmoving party 'to go
> beyond the pleadings and by her own affidavits, or by the depositions,
> answers to interrogatories, and admissions on file, *designated specific
> facts showing that there is a genuine issue for trial*.'  477 U.S. 317, 324
> (1986) (internal quotations omitted) (emphasis added).

Doe v. Winter, No. 04-CV-2170, 2007 U.S. Dist. LEXIS 25517, *2 n.2 (M.D. Pa.

Apr. 5, 2007) (parallel citations omitted; court's emphasis).  A party cannot evade

these litigation responsibilities in this regard simply by citing the fact that he is a *pro

se* litigant.  These rules apply with equal force to all parties.  See Sanders v. Beard,

No. 09-CV-1384, 2010 U.S. Dist. LEXIS, *15 (M.D. Pa. July 20, 2010) (*pro se*

parties "are not excused from complying with court orders and the local rules of

court"); <u>Thomas v. Norris</u>, No. 02-CV-01854, 2006 U.S. Dist. LEXIS 64347, *11 (M.D. Pa. Sept. 8, 2006) (*pro se* parties must follow the Federal Rules of Civil Procedure).

In this case, the plaintiffs have never responded to the statement of facts submitted in support of the defendant's summary judgment motion, despite being given ample time in which to frame a response. Therefore, we will accept those facts as true for purposes of adjudicating this motion. Accepting these facts as true, we find that, with the exception of John Liptok, none of the other plaintiffs in this action ever answered the discovery propounded upon them. This fact alone justifies dismissal of these plaintiffs from this lawsuit. See <u>Reshard v. Lankenau Hospital</u>, 256 F. App'x 506  (3d Cir. 2007) (failure to comply with discovery compels dismissal). Likewise, it is undisputed that Ashley Liptok, John James Liptok and Brian Liptok did not live at the Liptok Property during the relevant time period. Therefore, we are at a loss to understand what claims they may bring arising out of property damages torts that allegedly took place at a location where they did not reside.

Furthermore, it is also uncontested that the Bank only briefly owned the duplex property which adjoins the Liptok residence. Thus, the Bank obtained title to the property on or about December 12, 2013, and on or about March 5, 2014, the Bank

28

sold the property to Asset Data Solutions.  This uncontested, and limited, period of bank ownership of the adjoining property presents yet another obstacle for recovery by the plaintiffs since their haphazard manner of litigation has failed to identify when many acts are alleged to have occurred, and the few events described with precision in the complaint occurred either before, or after, the Bank owned the adjoining property.  (Doc. 1, ¶¶9 and 10, describing events which allegedly took place in November 2013, and the summer of 2014.)  In short, after two years of litigation Liptok's approach to the lawsuit leaves us entirely at sea in understanding when any of these alleged events may have occurred, making in virtually impossible to attribute responsibility for these actions to the Bank at the time when it owned the property.

Moreover, many of the plaintiffs' allegations seem to entail medical claims arising out of mold in the adjoining duplex, or structural damages claims.  In our view these claims would require expert engineering and medical evidence, and none has been presented or proffered by the plaintiffs.  This, too, is a fatal flaw in this case.  Under Pennsylvania law, the plaintiffs can maintain negligence claims against the Bank only if the plaintiffs establish all of the elements for a negligence cause of action, which requires proof of the following four essential elements as part of any claim:  (1) a duty on the part of the defendant to conform to a certain standard of conduct with respect to the plaintiff; (2) a breach of that duty by the defendant; (3)

a causal connection between the defendant's conduct and the injury suffered by the plaintiff; and (4) actual loss or damage suffered by the plaintiff.  Schmoyer by Schmoyer v. Mexico Forge, 437 Pa.Super. 159, 649 A.2d 705, 707 (Pa.Super.1994). Garcia v. Cummings, No. 1:07-CV-01886, 2010 WL 2598305, at *4 (M.D. Pa. Mar. 5, 2010), report and recommendation adopted, No. 1:07-CV-1886, 2010 WL 2597120 (M.D. Pa. June 24, 2010).   Pennsylvania law further recognizes that, in many instances, proving the elements of these claims may require presentation of expert testimony.   This requirement is imposed by rule in professional malpractice negligence actions and requires a certificate of merit from an expert witness to sustain such a claim.  See Pa.R.C.P. No. 1042.3.  Moreover, courts recognize that there are consequences which flow from a failure to provide such proof.  Where a tort action turns on allegations of a technical nature, and the plaintiff has failed to provide expert proof drawing a causal connection between allegedly negligence and the plaintiff's injuries, courts have held that negligence claims fail as a matter of law and must be dismissed.  See e.g., Mays v. Gen. Binding Corp., No. CIV. 11-5836 JBS/JS, 2013 WL 1986393, at *6 (D.N.J. May 10, 2013), aff'd, 565 F. App'x 94 (3d Cir. 2014); Ellis v. Beemiller, Inc., 910 F. Supp. 2d 768, 774 (W.D. Pa. 2012); Mracek v. Bryn Mawr Hosp., 610 F. Supp. 2d 401, 402 (E.D. Pa. 2009), aff'd, 363 F. App'x 925 (3d Cir. 2010); McCracken v. Ford Motor Co., 392 F. App'x 1, 4 (3d Cir. 2010); Koplove

v. Ford Motor Co., 795 F.2d 15, 17 (3d Cir. 1986).  The only exception to this general

rule under Pennsylvania exists with respect to negligence claims "where the matter

is ' "so simple, and (the) lack of skill or want of care so obvious, as to be within the

range of ordinary experience and comprehension of even nonprofessional persons."'

Berman, supra, 205 F.Supp.2d at 364 (citing Brannan v. Lankenau Hospital, 490 PA

588 (1980))."  Hakeem v. Salaam, No. CIV.A. 3:03-0098, 2006 WL 4130488, at *7

(M.D. Pa. July 18, 2006), subsequently aff'd, 260 F. App'x 432 (3d Cir. 2008).

Therefore, any of the plaintiffs' claims which require some element of expert proof

fail as a matter of law given the complete failure of the plaintiffs to present such

proof.

The plaintiffs' breach of contract claim similarly fails.  "Under Pennsylvania

law, to establish a claim for breach of contract, a complaining party must prove (1)

the existence of a contract, including its essential terms; (2) a breach of a duty

imposed by that contract; and (3) resulting damages.  Reed v. Chambersburg Area

Sch. Dist., 951 F.Supp.2d 706, 726 (M.D.Pa.2013); Electron Energy Corp. v. Short,

408 Pa.Super. 563, 597 A.2d 175 (1991) order affirmed by 533 Pa. 66, 618 A.2d 395

(1993).  A valid and binding contract exists when the parties have manifested an

intention to be bound, the terms of the contract are sufficiently definite, *and there is

consideration.* In re Estate of Hall, 731 A.2d 617, 621 (Pa.Super.Ct.1999)." Belnick,

Inc. v. TBB Glob. Logistics, Inc., 106 F. Supp. 3d 551, 563 (M.D. Pa. 2015)(emphasis added).  In turn, "[t]he essential elements of a contract are an offer, acceptance, and *consideration* or a mutual meeting of the minds.  Riviello v. First Nat. Cmty. Bank, Civ. A. 3:10–2347, 2013 WL 1348259 (M.D.Pa. Apr.3, 2013)." Giambra v. Storch, No. 3:14-CV-1084, 2015 WL 3651688, at *3 (M.D. Pa. June 11, 2015)(emphasis added).  "It is settled that failure of consideration is a valid defense to breach of contract.  Resolution Trust Corporation v. Forest Grove, Inc., 33 F.3d 284, 292 (3d Cir.1994).  ' "Failure of consideration occurs when the consideration bargained for does not pass, in whole or in part, to the promisor." ' Resolution Trust, 33 F.3d at 292 (quoting McGuire v. Schneider, Inc., 368 Pa.Super. 344, 534 A.2d 115, 118 (1987), aff'd without opinion, 519 Pa. 439, 548 A.2d 1223 (1988) (per curiam)).  Indeed, the definition of consideration is, essentially, that which is bargained for.  See Restatement (Second) of Contracts § 71(1) and (2) (1981) ('To constitute consideration, a performance or return promise must be bargained for.... A performance or return promise is bargained for if it is sought by the promisor in exchange for his promise....')."  Hoffman v. Bankers Trust Co., 925 F. Supp. 315, 318–19 (M.D. Pa. 1995).

Here, the plaintiffs support their breach of contract claim by referring to excerpts from emails they exchanged with Bank officials when they were

experiencing problems with their furnace.  In our view these emails fall far short of establishing an enforceable contract for one simple reason.  One of the basic requisites for a legally enforceable contract is consideration, the conferring of a benefit in return for receiving some benefit.  The plaintiffs' pleadings are utterly devoid of any well-pleaded allegations or facts showing that there was any consideration exchanged by the plaintiffs in return for what they allege was a promise to perform these repairs.  Rather, what the fragmentary evidence produced by the plaintiffs seems to show is an earnest effort by some bank employees to understand and address a concern voiced by Mr. Liptok, an effort which was met by repeated refusals to follow simple instructions coupled with angry accusations on Liptok's part.  This complete lack of proof as to consideration, an essential element of any contract, defeats any breach of contract claim, and compels dismissal of that claim.

In sum, given the confusion of claims, and proof, which still abounds in this case after twenty two months of litigation, and presented with a complete failure by the plaintiffs to respond in a meaningful way to these concerns raised in the defendant's summary judgment motion, we conclude that a vast majority of the plaintiffs' claims fail as a matter of law at this time.

We note, of course, that the plaintiffs' last pleading, their self-styled motion to dismiss this summary judgment motion, argues that the defendant's settlement offers

in this lawsuit somehow prove their culpability and defeats this summary judgment motion.  This assertion, which is the principal argument articulated by the plaintiffs in opposition to this motion for summary judgment, fails for a single simple reason. As a general rule "[u]nder Rule 408, [of the Federal Rules of Evidence] settlement agreements are inadmissible when 'offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount.'  Fed.R.Evid. 408(a)." Trout v. Milton S. Hershey Med. Ctr., 572 F. Supp. 2d 591, 599 (M.D. Pa. 2008). Therefore, contrary to the plaintiffs' assertions, a settlement offer is not tantamount to a confession, may not be admitted into evidence, and cannot defeat a motion for summary judgment, where "only evidence which is admissible at trial may be considered in ruling on a motion for summary judgment."  Countryside Oil Co., Inc. v. Travelers Ins. Co., 928 F.Supp. 474, 482 (D.N.J.1995).

In short, given the chaos created by the Liptoks' angry approach to this lawsuit, at present many of the claims advanced by the various plaintiffs fail on a host of grounds.  Thus, a merits analysis reveals that many of the claims advanced in this case are likely subject to dismissal.  Therefore, we find that all of the Poulis factors call for dismissal of this case.

### IV.   **Recommendation**

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the defendant's motion for summary judgment (Doc. 69.) be GRANTED, and the plaintiffs' motion to dismiss motion for summary judgment (Doc. 78.) be DENIED.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 20th day of October 2016.

*S/Martin C.  Carlson*
Martin C. Carlson
United States Magistrate Judge